

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JUDY LYNN MITCHUM, <br> PLAINTIFF, | § <br> § <br> § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-620-A |
| MICHAEL J. ASTRUE, <br> COMMISIONER OF SOCIAL SECURITY, <br> DEFENDANT. | § <br> § <br> § <br> § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I.  STATEMENT OF THE CASE

Plaintiff Judy Lynn Mitchum ("Mitchum") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits under Title II, and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In August 2008, Mitchum protectively applied for social security benefits, alleging that her disability began on May 28, 2008. (Transcript ("Tr.") 12, 66–70; *see* Tr. 125–34.) Her applications were denied initially and on reconsideration, and Mitchum requested a hearing before an administrative law judge ("ALJ"). (Tr. 12; *see* Tr. 35–42.) An

ALJ held a hearing on February 25, 2010 and issued a decision on March 23, 2010 that Mitchum was not disabled. (Tr. 12–22; *see* Tr. 425–450) On July 2, 2011, the Appeals Council denied Mitchum's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5–8.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20

C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Mitchum presents only one issue to the Court: Whether substantial evidence supports the ALJ's residual functional capacity ("RFC") assessment.

### IV. ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his March 23, 2010 decision, stated that Mitchum had not engaged in any substantial gainful activity since May 28, 2008, the alleged onset date for her disability. (Tr. 14.) The ALJ found that Mitchum would be insured for disability benefits under Title II until December 31, 2012. (Tr. 14.) He further found that Mitchum had two "severe" impairments: lumbar degenerative disk disease status post-surgery and depression. (Tr. 14.) The ALJ also found that Mitchum had the impairments of hypertension, migraine headaches, and thyroid disorder, but, because these were effectively treated with medication, the ALJ found that these impairments were not severe. (Tr. 19.) Next, the ALJ held that none of Mitchum's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 14–19.) As to Mitchum's RFC, the ALJ stated:

> The claimant has the residual functional capacity to perform light work[1] as defined in 20 CFR 404.1567(b) and 416.967(b) that requires only occasional stooping. She is able to understand, remember, and carry out the lower end of detailed tasks (due to depression and physical pain).
>
> . . . .
>
> She retains the ability to perform said residual functional capacity for a sustained basis; i.e., for a 40-hour work week, for an indefinite period of time.

---

[1] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

(Tr. 19 (footnote added, citation omitted, emphasis omitted).) The ALJ opined, based on his RFC assessment, that Mitchum was able to perform her past relevant work as a small product assembler; thus, she was not disabled. (Tr. 21.)

## V.   DISCUSSION

Mitchum's claim is, in essence, that substantial evidence does not support the ALJ's RFC determination because the ALJ rejected the opinions of Jay Turk, M.D. ("Turk") and Kevin James, M.D. ("James"), two of her treating physicians, without applying the required factors in 20 C.F.R. § 404.1527(c) and without good cause. (Plaintiff's Brief ("Pl.'s Br.") at 3–7.) Mitchum argues that if the ALJ had properly considered the opinions of Drs. Turk and James, then the ALJ would have found that Mitchum was only capable of sedentary work. (Pl.'s Br. at 7.) Under these circumstances, Mitchum asserts that she would have been found disabled under the Medical-Vocational Guidelines, Grid Rule 201.10. (Pl.'s Br. at 7.)

RFC is what an individual can still do despite her limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.*

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

---

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

Furthermore, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564,568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 404.1527, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

Specifically, Mitchum contends that the ALJ did not give proper weight to two Medical Source Statements provided by Drs. Turk and James. The first Medical Source Statement was completed by Dr. Turk, Mitchum's primary care physician, on January 5, 2010. (Tr. 356–59.) In his statement, Dr. Turk opined that Mitchum could sit or stand continuously for thirty minutes at a time and could also "sit and stand/walk" for around two hours total in an eight-hour work day. (Tr. 357.) Dr. Turk noted that he thought Mitchum could walk no more than half a city block without rest, and her "experience of pain" was severe "often" enough to interfere with her attention and concentration. (Tr. 357.) Additionally, Dr. Turk posited that Mitchum would need to take breaks to lie down or rest at unpredictable intervals during an eight-hour work day, and

she could only occasionally lift or carry less than ten pounds (and never more) in a competitive work situation. (Tr. 358.) Dr. Turk stated that Mitchum would have difficulty working at a regular full time job on a sustained basis because of her back pain and neuropathy.[4] (Tr. 359.)

The second Medical Source Statement was completed by Mitchum's orthopedic surgeon, Dr. James, on January 12, 2010. (Tr. 352–55.) Dr. James opined that Mitchum could continuously sit or stand for thirty minutes at a time and could walk no more than half a city block without rest. (Tr. 353.) Dr. James also noted that he thought that Mitchum could also "sit and stand/walk" less than two hours total in an eight-hour work day and that Mitchum's "experience of pain" would "frequently" be severe enough to interfere with her attention and concentration. (Tr. 353.) Dr. James further stated that Mitchum could lift ten pounds or less frequently and twenty pounds occasionally, and she would possibly need one unscheduled break of an unspecified duration during an eight-hour work day. (Tr. 354.) Dr. James posited that Mitchum would have difficulty working at a regular full-time job on a sustained basis but thought that she could do sedentary work that fell within his proposed limitations. (Tr. 355.)

The ALJ, contrary to Mitchum's assertion, thoroughly discussed her full treatment history with Drs. Turk and James, including both above-referenced Medical Source Statements.[5] (Tr. 15–21.) Furthermore, Mitchum's treatment history supports the ALJ's RFC assessment. The ALJ, *inter alia*, noted that on November 18, 2008, Mitchum saw Dr. James for an orthopedic evaluation in which Dr. James found that Mitchum had a full range of motion in her neck and lower extremities and her station and posture were both normal. (Tr. 17; *see* Tr. 250.)

---

[4] The Court notes that much of Dr. Turk's report seems to be based on Mitchum's subjective complaints because Dr. Turk writes that Mitchum "rates as a 9 out of 10 when [back pain] flares" and that she "reports getting up and doing light housework will exacerbate pain for 2-3 days." (Tr. 356.)

[5] The Court notes that the ALJ stated that both Medical Source Statements were dated January 10, 2010. However, this appears to be a typographical error as the actual date of Turk's statement was January 5, 2010 and the actual date of James' statement was January 12, 2012. (Tr. 18, *see* Tr. 352-59.)

The ALJ also noted that during this evaluation, Dr. James indicated that Mitchum's straight leg raise test was negative bilaterally, and Mitchum had normal neurological sensation. (Tr. 17; *see* Tr. 250.) In addition, the ALJ pointed out that Dr. Turk completed a Medical Release/ Physician's Statement on January 15, 2009, which stated that Mitchum was **not** permanently disabled and that her disability was expected to last six months or less. (Tr. 17; *see* Tr. 386) The ALJ noted that in his statement, Dr. Turk opined that:

> She could sit for 4 hours during a work day, stand for 2 hours, climb stairs and ladders for 2 hours, kneel and squat for 2 hours, bend/stoop for 2 hours, push/pull for 2 hours, keyboard for 2 hours, and lift and carry for 2 hours. She was able to lift and carry objects weighing up to 10 pounds up to one hour a day.

(Tr. 17; *see* Tr. 386.)

The ALJ further acknowledged that Mitchum elected to undergo a lumbar fusion procedure on February 14, 2009. (Tr. 17; *see* Tr. 324.) He noted that Mitchum reported on March 10, 2009 that her back pain was better after the procedure. (Tr. 17; *see* Tr. 333.) The ALJ acknowledged that Mitchum reported to the emergency room on August 2, 2009, stating that she had slipped and twisted her left hip three days earlier. (Tr. 18; *see* Tr. 297.) The ALJ further stated that upon examination, however, the medical staff found Mitchum in no acute distress and there was no evidence of trauma. (Tr. 18; *see* Tr. 297–98, 303.) The ALJ recognized that emergency room medical staff found that Mitchum reported "she was independent in her activities of daily living" and that she received injections of pain medication before she was discharged to return home. (Tr. 18; *see* Tr. 297–98.) The ALJ also noted that in a November 19, 2009 examination, Dr. Turk found that Mitchum had a normal and full range of motion with no extremity abnormalities. (Tr. 18; *see* Tr. 361.)

In determining Mitchum's RFC, the ALJ did reject the Medical Source Statements prepared by Drs. Turk and James. (Tr. 21.) The ALJ correctly recognized that he was not bound

to accept either treating physician's conclusion as to disability, since it is the Commissioner who makes the legal determination of disability. (Tr. 21.) *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank*, 326 F.3d at 620. Ultimately, the ALJ found that the Medical Source Statements were not supported by clinical or diagnostic objective evidence but relied wholly on Mitchum's subjective complaints. (Tr. 21.) The ALJ was not required to perform a detailed analysis under 20 C.F.R. §§ 404.1527(c), 416.927(c) because this analysis is only required where there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist.[6] *Newton*, 209 F.3d at 455–57. Here, the ALJ relied on other treatment records from Drs. James and Turk to reach the conclusion that Mitchum could perform light work, with limitations. (Tr. 16–21.) The ALJ noted that both physicians indicated that Mitchum was capable of a full range of motion. (Tr. 17–18; *see* Tr. 250, 361.) The ALJ further found that Mitchum's depression may have altered her perception of pain since the objective medical evidence did not support the physical limitations she asserted.[7] (Tr. 21.) If a proposed limitation is not supported by the record, then the ALJ is not required to consider it in assessing RFC. *See Muse*, 925 F.2d at 790. While Mitchum received treatment for depression and pain separately,

---

[6] Even assuming the ALJ was required to perform a detailed analysis under Sections 404.1527(c) and 416.927(c), the Court finds that the ALJ did perform such an analysis. As to factors one, two, and five, the ALJ went through the treatment records of both Drs. Turk and James, specifically noting various times both doctors had examined and treated Mitchum and recognizing that Dr. James was an "orthopedic surgeon" and Dr. Turk was Mitchum's "family physician." (Tr. 18; *see* Tr. 16–19.) As to factors three, four, and six, the ALJ pointed out those portions of Drs. Turk and James' opinions that were not consistent with other evidence in the record and provided reasons why he was not accepting some of their opinions. (Tr. 18–19.)

[7] Mitchum argues that the ALJ's statement that "[n]o attempt has been made to address the correlation of her pain complaints and depression with comprehensive pain management" is not true because she "has done many things to address her pain complaints and depression." (Pl.'s Br. at 6.) The Court, however, disagrees with Mitchum's interpretation of the ALJ's statement. In the Court's view the ALJ was not implying that Mitchum had not taken steps to address her pain and depression. Instead, the ALJ was stating that it did not agree with the relevant Medical Source Statements of Drs. Turk and James because, *inter alia*, their opinions in such statements appeared to rely on Mitchum's subjective statements and there had been no attempt to weigh the effect of Mitchum's depression on her subjective statements of pain.

11

the ALJ noted that no attempt was made throughout Mitchum's treatment history to address a correlation between the two. (Tr. 21.)

In summary, the ALJ did consider the treatment records and opinions of Drs. Turk and James. However, the ALJ chose not to accept their opinions regarding issues to be resolved by the Commissioner. *See* 20 C.F.R. §§ 404.1527(d) 416.927(d). The ALJ properly disregarded the Medical Source Statements of Drs. Turk and James because they were unsupported by objective clinical or diagnostic evidence based on Mitchum's full treatment history, including medical records from both physicians. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Newton*, 209 F.3d at 455–57. Consequently, the Court concludes that the ALJ did not err and his RFC determination is supported by substantial evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **August 1, 2012**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 18, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE